# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of: )
)
Apple I-Phone with a black and yellow otter case, with serial ) Case No. 16-864 M (NJ)
#: 358540052898635 (see Attachment A for full description), )
)
)
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

Apple I-Phone with a black and yellow otter case, with serial #: 358540052898635 (see Attachment A for full description)

located in the Eastern District of Wisconsin, there is now concealed:
See Attachment B.

The basis for the search under Fed. R. Crim P. 41(c) is:
■ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
■ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: armed bank robbery, in violation of Title 18, United States Code, Section 2113(a)

The application is based on these facts: See attached affidavit.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Benjamin Hruz, Special Agent FBI
Printed Name and Title

Sworn to before me and signed in my presence:

Date: May 20, 2016

_____
Judge's signature

City and State: Milwaukee, Wisconsin    Nancy Joseph, U.S. Magistrate Judge
Printed Name and Title

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Benjamin Hruz, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been so employed for over nineteen years. I am currently assigned to the Milwaukee Area Violent Crimes Task Force ("MAVCTF"). My duties as a Special Agent with the FBI include investigating violent crimes such as commercial robberies, carjackings, bank robberies and violent criminal enterprises. I have gained experience in the conduct of such investigations through previous case investigations, formal training, and in consultation with law enforcement partners in local, state, and federal law enforcement agencies.

2. This affidavit is based upon my personal knowledge as well as information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. This affidavit is also based upon information gathered from interviews of citizen witnesses, reports, official records, law enforcement reports, and my training and experience.

3. This affidavit is submitted in support of an application for a search warrant for the below listed electronic device ( "Device"), which is currently in evidence at the Milwaukee Field Office of the Federal Bureau of Investigation, for evidence of involvement in the armed bank robbery described below, in violation of Title 18, United States Code, Section 2113(a).

   a. Apple iPhone with a black and yellow otter case, with serial #: 358540052898635.

4. Since this affidavit is only for the limited purpose of securing a search warrant, I have not set forth each and every fact known to me concerning this investigation. I have included what I believe are facts sufficient to establish probable cause for the warrant sought.

## **PROBABLE CAUSE**

5. On Friday, May 13, 2016, at approximately 10:55 a.m., the Tri City National Bank, located at 4295 W. Bradley Rd., State and Eastern District of Wisconsin, was robbed by three armed and masked individuals. The subjects entered the business and demanded money from multiple teller drawers. They obtained approximately $7,989 in U. S. currency. The funds of Tri City National Bank are insured by the Federal Deposit Insurance Corporation.

6. Employee Victim S.B. reported that she was working as a teller at the aforementioned Tri City Bank on the date and time of the robbery, when she heard loud voices coming from the main lobby. S.B. looked out into the lobby and observed several masked black male subjects yelling for everyone to, "get on the ground." S.B. observed at least one of the subjects jump over the teller counter. S.B. stated that she saw that one of the subjects was wearing a black and white bandana around his face.

7. Employee Victim A.S. reported that she was working as a manager at the aforementioned Tri City Bank on the date and time of the robbery when she heard loud voices coming from the lobby of the bank. A.S. walked out of her office and observed a suspect in the lobby brandishing a black handgun and walking towards the rear of the bank. She heard a suspect yell out, "Who's back there?" repeatedly. A.S. immediately turned around and hit her panic alarm.

8. Your affiant reviewed surveillance video of the bank robbery and observed that three masked subjects entered the bank, and one brandished a larger-framed black semi automatic handgun. The subject with the handgun remained in the lobby controlling the victims while the other two subjects went behind the teller counter and removed U.S. currency from

2

multiple teller drawers. Your affiant learned that approximately $7,989 was taken during the robbery. Included in this amount were three currency dye packs. The surveillance video also reveals that all three of the subjects were wearing similar type clothing, to include dark hooded sweatshirts, black knit hats, and black and white patterned bandanas covering their faces. One of the subjects was also carrying what appeared to be a white colored pillow case.

9. A non-bank employee witness, R.B., reported that he was pulling his vehicle into the parking lot of the aforementioned Tri City Bank on the date and time of the robbery. R.B. stated that he noticed a black vehicle with dark tinted windows quickly pulling out of the bank parking lot in such a manner that he knew something had just occurred at the bank. R.B. stated that the black vehicle pulled out of the parking lot at a high rate of speed and turned right onto the eastbound side of W. Bradley Rd. and then turned right again, such that it headed southbound on N. Teutonia Ave. While the vehicle was driving away, R.B. observed red smoke pouring out of the black vehicle.

10. Approximately fifteen minutes after the initial dispatch call for the bank robbery, the Brown Deer Police Department was advised of the fact that the Milwaukee Police Department and the Milwaukee Fire Department were responding to the report of a car fire involving a black vehicle in the 7300 block of N. 38th St., Milwaukee, WI. The location of this vehicle was in the same general location in which the suspect vehicle was last seen heading. Located near where the above mentioned vehicle was located, investigators spoke to N.F., who advised that she was upstairs in her apartment in the area of 7300 N. 38th St. when she observed three individuals wearing all black clothing, exiting the vehicle that the police and fire department had responded to. The individuals were wearing black hoodies, black pants and had bandanas covering their faces. N.F. further stated that as the three individuals were exiting the

3

vehicle, she could see red pieces of paper falling to the ground and smoke coming from the vehicle.

11. The above mentioned vehicle was recovered as evidence and towed to the Brown Deer Police Department. Pursuant to a State of Wisconsin search warrant, the vehicle, a black 2002 Mercedes Benz automobile, bearing Vehicle Identification Number WDBLJ70BX2F195300, was subsequently searched, and numerous items of evidentiary value were recovered. These items included clothing which matched what the subjects were wearing during the bank robbery, a pillow case, and dye stained U.S. currency. Also recovered in the vehicle was an Apple iPhone in a black and yellow Otter case having the serial number of 358540052898635.

## III. TECHNICAL TERMS

12. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.
   b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images.

4

Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

## IV. ELECTRONIC STORAGE AND FORENSIC ANALYSIS

13. Based on my knowledge, training, and experience, as well as my conversations with other Special Agents of the Federal Bureau of Investigation, who are experienced with electronic communication systems, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the Devices. This information can sometimes be recovered with

5

forensics tools.

14. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of use, who used it, and when.

15. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to, computer-assisted scans of the entire medium that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

16. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

V. **CONCLUSION**

17. Based on the facts contained within this affidavit, I believe that probable cause exists to search the Devices, which is more particularly described in Attachment A, and which is currently located in evidence at the Milwaukee Field Office of the Federal Bureau of Investigation, for evidence of armed robbery.

6

## ATTACHMENT A

The following property is to be searched:

a. Apple iPhone with a black and yellow otter case, with serial #: 358540052898635

The Device is currently in evidence at the Milwaukee Field Office of the Federal Bureau of Investigation. This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

a. All records on the Devices described in Attachment A that relate to violations of Title 18, United States Code, Section 2113(a) (Armed Bank Robbery), which was in active memory of the Devices as of May 13, 2016, to include:

   a. any information related to possession of firearms (including photographs, text messages, emails, or any other communication information);

   b. any web search information related to the offense described above;

   c. photographs of locations evidencing pre-robbery surveillance;

   d. any communications via text messages, email, Facebook, Twitter, or other web-based applications regarding the offenses described above; and

   e. all bank records, checks, credit card bills, account information, and other financial records.

b. Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of electronic storage and any photographic form.

8